IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERCI STAMPLEY and PRATHANE L. MATMANIVONG, individually and on behalf of the class defined herein, )<br><br>Plaintiff, )<br><br>v. )<br><br>LVNV FUNDING, LLC; ALEGIS GROUP LLC; and RESURGENT CAPITAL SERVICES LP, )<br><br>Defendant. ) | Case No.: 08 CV 2811<br><br>Judge Castillo<br>Magistrate Judge Schenkier |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT OR STAY PURSUANT TO COLORADO RIVER DOCTRINE

Defendants, LVNV Funding, LLC ("LVNV"), Alegis Group LLC ("Alegis"), and Resurgent Capital Services LP ("Resurgent"), by and through their attorneys David M. Schultz and Todd P. Stelter, move to dismiss plaintiffs' first amended complaint pursuant to Rule 12(b)(1), or in the alternative to stay the case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), stating as follows:

### I. INTRODUCTION

Plaintiffs claim that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f ("FDCPA"), Illinois Collection Agency Act, 225 ILCS 425/8b ("ICAA") and Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") by filing state court lawsuits for collection of debts from them without attaching an assignment document that complies with §8b of the ICAA to the collection complaint. Essentially, plaintiffs' FDCPA and ICFA claims are derivative of plaintiffs' ICAA claims.

Plaintiffs' ICAA claim, and therefore plaintiffs' FDCPA and ICFA claims, fail for multiple reasons. The foremost reason plaintiffs' claims fail is because the ICAA does not apply to

defendants for various legal and factual reasons. These "Illinois state court" issues are currently being litigated in state court in the collection actions, *LVNV Funding, LLC v. Eric Stampley*, Case No.: 08-M1-108500 and *LVNV Funding, LLC v. Prathane L. Matmanivong*, Case No.: 08-M1-140111. Plaintiff Stampley here (defendant in his state court case) and plaintiff Matamanivong here (also defendant in his respective state court case) have both filed identical motions to dismiss pursuant to 735 ILCS 5/2-619 challenging whether LVNV has standing to sue them due to operation of the ICAA after amendments made to it by the Illinois state legislature on January 1, 2008. *See* Stampley's 2-619 Motion to Dismiss, attached hereto as Exhibit A [exhibits omitted]; *see also* Matmanivong's 2-619 Motion to Dismiss, attached hereto as Exhibit B [exhibits omitted]. The judge in those cases has entered similar briefing schedules on both motions and the issues raised in those motions are set for hearing on October 23, 2008. *See* Stampley case Agreed Motion Call Order, attached hereto as Exhibit C; *see also* Matmanivong case Motion Call Order, attached hereto as Exhibit D.

Defendants request this case be stayed pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), while the state court resolves whether the ICAA applies to defendants in this case.

## II. SUMMARY OF RELEVANT ALLEGATIONS OF COMPLAINT

Defendant LVNV Funding, LLC ("LVNV") is alleged to be a "collection agency" as defined in the ICAA, (*See* First Amended Complaint, attached to the Motion as Exhibit E at ¶64), and is alleged to have engaged in the business of purchasing charged-off consumer debts and attempting to collect them. (Ex. E, ¶20). Defendant Resurgent Capital Services LP ("Resurgent") is also alleged to be a collection agency. (Ex. E, ¶27). There are no allegations that explain why defendant Alegis Group LLC ("Alegis") was named in the First Amended Complaint other than that it is alleged that Alegis is the general partner of Resurgent and therefore the "acts of Resurgent are attributable to

6338868v1 889678

Alegis." (Ex. E, ¶¶36-37).  Likewise, there are no allegations that explain how Resurgent is connected to this case other than that "Resurgent and LVNV are under common ownership and management." (Ex. E, ¶32).

On or about February 4, 2008, LVNV filed suit through its counsel Meyer & Njus, P.A. against plaintiff Stampley in the Circuit Court of Cook County to collect a $4635.53 credit card debt from him. (Ex. E, ¶38; *See also* Stampley state court Complaint, attached to the Motion as Exhibit F).  On or about March 17, 2008, LVNV filed suit through its counsel Weltman, Weinberg & Reis Co., L.P.A., against plaintiff Matmanivong in the Circuit Court of Cook County to collect a $4444.61 credit card debt from him. (Ex. E, ¶38; *See also* Matmanivong state court Complaint, attached to the Motion as Exhibit G).  The state court complaints did not attach assignment documents. (Ex. E, ¶¶39, 44).  Plaintiffs allege that defendants violated §8b of the ICAA because they did not attach assignments to either state court pleading. (Ex. E, ¶67).  Plaintiffs also claim that defendants' alleged violations of the ICAA constitute unfair and deceptive acts or practices under the FDCPA and ICFA. (Ex. E, ¶¶59, 72).

## III.  PLAINTIFFS' CASE SHOULD BE STAYED PENDING RESOLUTION OF THE STATE COURT LITIGATION

Federal litigation can be stayed in exceptional circumstances pending the outcome of a parallel case as a matter of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v United States*, 424 U.S. 800, 817 (1976).  Under a two part analysis, the court must first consider "whether the concurrent state and federal actions are actually parallel." *Clark v Lacy*, 376 F.3d 682 (7th Cir. 2004)(citations omitted).  If they are parallel, the court must consider a number of non-exclusive factors that demonstrate the existence of "exceptional circumstances." *Id., citing LaDuke v Burlington N.R.R. Co.*, 879 F.2d 1556, 1559 (7th Cir. 1989).  Here, this analysis demonstrates a stay is appropriate.

3

## A. Plaintiff's state and federal actions are parallel.

Two suits are considered "'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Clark*, 376 F.3d at 686 *citing Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). A court "look[s] not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Liebert Corp. v. Mazur*, 2004 WL 2095666 (N.D.Ill.2004), *citing Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 695 (7th Cir. 1985). Plaintiffs' state and federal cases are parallel.

Plaintiffs here are the defendants in the state court collection litigation pending in Cook County's municipal department. (Exs. A, B, C, D, F & G). Both plaintiffs retained Edelman, Combs Latturner & Goodwin LLC ("Edelman") to defend their state cases and to prosecute this one. The main parties are the same in both cases.

Similarly, both cases have parallel issues, namely whether the ICAA applies to LVNV (or Alegis or Resurgent or any other similar entity suing in Illinois state courts) due to the Illinois legislature's January 1, 2008 amendments to the ICAA. (Exs. A, B & E). Plaintiffs currently are seeking to have this federal Court consider the facts and legal issues (pertaining to the applicability of an Illinois state statute) that are concurrently before the state court. It is inappropriate for two separate forums, federal and state court, to simultaneously preside over the same parties to decide these parallel issues of fact and law.

## B. Exceptional circumstances favor deference to state court.

There are ten factors a district court can consider when deciding whether "exceptional circumstances" exist to justify deference to the state courts under the *Colorado River* doctrine. *LaDuke*, 879 F.2d at 1559. They are: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4)

6338868v1 889678

the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.* The foregoing factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id., citing Moses H. Cone Memorial Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 940, 74 L.Ed.2d 765 (1983). Factors 1, 2 and 9 do not apply here. The remaining 7 factors are applicable and support entry of an order staying the federal case.

1.    **Litigating in federal court would create piecemeal litigation. (Factor 3)**

If this Court accepts jurisdiction here, piecemeal litigation would result. Piecemeal litigation occurs when different tribunals consider the same issue, duplicate efforts and possibly reaching different results. *LaDuke*, 879 F.2d at 1560, *citing Day v Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988); *See Dayton Hudson Corp. v Chicago Flood Executive Committee*, No. 95 C 6779, 1996 WL 451310 (N.D.Ill. Aug. 6, 1996). Two courts here are presented with the issue of whether the Illinois legislature's January 1, 2008 amendments to the ICAA make it applicable to LVNV (and allegedly Alegis and Resurgent), and as a result whether LVNV needed to be licensed to be a plaintiff in state court, whether LVNV had standing to sue plaintiffs in state court, and whether LVNV's attorneys were required to attach an assignment document to the complaints in state court pursuant to the ICAA. Therefore, this is a textbook case of simultaneous litigation of parallel issues in the state and federal courts, which is "unseemly" and a "grand waste" of the efforts of the parties and the courts. *LaDuke*, 879 F.2d at 1560, *citing Microsoftware Computer Sys. v Ortel Corp.*, 686 F.2d 538 (7th Cir. 1982), *overruled on other grounds, Gulf Stream Aerospace Corp. v Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). Not only is the litigation of parallel federal and state court lawsuits a threat to judicial economy, "[t]he legitimacy of the court system in the eyes of the public and fairness to the

5

individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications. *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 694 (7th Cir. 1985).

## 2.    Cook County Municipal Department obtained jurisdiction first.  (Factor 4)

In February and March of 2008, LVNV's collection attorneys filed suit against plaintiffs in state court.  (Exs. F & G).  Plaintiff Stampley filed this federal court action on May 15, 2008 and the complaint was amended to add plaintiff Matmanivong on June 19, 2008.  Thus, the state court obtained jurisdiction over the facts and legal theories presented by plaintiffs before they sued defendants in federal court, which weighs in favor of a stay of the federal litigation.

## 3.    State law governs the case. (Factor 5)

Here, the governing law is the ICAA.  The FDCPA and ICFA claims are derivative of plaintiffs' ICAA claims.  (Ex. C).  Plaintiffs are asking this federal Court to decide whether the Illinois legislature's January 1, 2008 amendments to a state statute, the ICAA, affected LVNV's standing to be a plaintiff in Illinois state court collection lawsuits, and furthermore, whether the manner in which LVNV's attorneys acted in state court is procedurally proper under the ICAA. These state law issues are before the state court judge and should be decided there on the already pending 2-619 motions to dismiss.  (Exs. A & B).

## 4.    Plaintiffs' rights are protected by resolving his case in state court.  (Factor 6)

The claims and legal theories plaintiffs raise in federal court in their first amended complaint are essentially the same issues raised in the state court case, namely whether the ICAA (post-January 1, 2008) allows entities like LVNV to sue to collect debt (through collection attorneys) in state court and whether the ICAA restricts the manner and method in which LVNV's attorneys do that.  These issues are before the state court judge in plaintiffs' motions to dismiss.  (Exs. A & B).  All of the issues pending in federal court will be raised in response by defendants when they are required to

6

respond per the state court's briefing schedule. (Exs. C & D). The very fact that plaintiffs, through Edelman, their attorney in both the state and federal cases, filed the motions to dismiss, is evidence that plaintiffs' rights can be and are being protected (and properly determined) in state court. The state court also is obviously going to be familiar with the interpretation of an Illinois state statute, the ICAA, as it has been recently amended by the Illinois state legislature, and the resulting affect, if any, on how collection suits are brought in Illinois state courts.

5.     **The state case has been pending longer than the federal case. (Factor 7)**

Again, in February and March of 2008, LVNV's collection attorneys filed suit against plaintiffs in state court. (Exs. F & G). Plaintiff Stampley filed this federal court action on May 15, 2008 and the complaint was amended to add plaintiff Matmanivong on June 19, 2008. Thus, the state court case has been pending longer and a motions to dismiss are pending. (Exs. C &D). Pursuant to the *Colorado River Doctrine*, plaintiffs' federal case should be stayed pending the resolution of the state cases.

6.     **Litigating both cases creates concurrent jurisdiction. (Factor 8)**

As has been demonstrated above, the legal issues pending in both cases are the same. This has resulted in simultaneous litigation of parallel issues in the state and federal courts and concurrent jurisdiction. Either court can rule on the applicability of the ICAA to defendants and either court can analyze the ICAA to determine whether defendants complied with it.

7.     **The federal case is duplicative of the state case. (Factor 10)**

While the federal case is not necessarily vexatious, it is duplicative of the facts and legal issues involved in the state court case for the reasons argued above.

6338868v1 889678

WHEREFORE, defendants respectfully request this Court enter an Order dismissing plaintiffs' first amended complaint or staying this matter pursuant to *Colorado River Water Conservation District v United States*, 424 U.S. 800 (1976),

Respectfully submitted,

By: s/David M. Schultz
    David M. Schultz
    One of the Attorneys for Defendants

David M. Schultz
Todd P. Stelter
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ERIC STAMPLEY,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )
                                        )   COURT FILE NO. 08 CV 2811
LVNV FUNDING, LLC; ALEGIS GROUP         )
LLC; and RESURGENT CAPITAL SERVICES     )   Judge Castillo
LP,                                     )
                                        )   Magistrate Judge Schenkier
                    Defendants.         )
                                        )
                                        )

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2008, I electronically filed **Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint or Stay Pursuant to Colorado River Doctrine** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

**Dan Edelman**
dedelman@edcombs.com

Respectfully submitted,

By:    s/Todd P. Stelter

David M. Schultz
Todd P. Stelter
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Ste 300
Chicago, IL 60601
(312) 704-3000

9

6338868v1 889678

# EXHIBIT A

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

LVNV FUNDING, LLC,                    )
                                      )
        Plaintiff,            )      08-M1-108500
                                      )
    v.                           )
                                      )
ERIC STAMPLEY                         )
                                      )
        Defendant.            )

## DEFENDANT ERIC STAMPLEY'S §2-619
## MOTION TO DISMISS FOR LACK OF STANDING

Defendant Eric Stampley respectfully requests, pursuant to 735 ILCS 5/2-619(a)(2) and (9), that the Court dismiss this action with prejudice on the ground that the plaintiff, LVNV Funding, LLC, is required to but does not have a collection agency license and thus lacks standing to sue.

The grounds for this motion are as follows:

1.    Plaintiff LVNV Funding, LLC alleges that it is bringing suit as the putative assignee of an alleged charged-off consumer credit card debt.

2.    Plaintiff LVNV Funding, LLC has filed, since January 1, 2008, over 500 lawsuits against residents of Illinois on the same claimed basis. **Exhibit A** is a printout of the Cook County Circuit Court listing of its filings.

3.    LVNV Funding, LLC is therefore a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

4.    Section 425/3(d), as amended effective January 1, 2008, brings debt buyers within its purview by providing that "[a] person, association, partnership, corporation, or other legal

1



**EXHIBIT**

**A**

entity acts as a collection agency when he or it ... [b]uys accounts, bills or other indebtedness and engages in collecting the same."

5.    Previously coverage was limited to a person who "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same."

6.    By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as LVNV Funding, LLC, who buy charged-off debts for their own account. See Attorney General Madigan's September 17, 2007 press release, Exhibit B, and the redlined version of the statute, Exhibit C.

7.    This change in the law was made in response to abusive practices by debt buyers. For example:

a.    An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated, based in part on an interview with an executive of an Illinois debt buyer:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent.
> . . . .

Corinna C. Petry, Do Your Homework: Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises, Collections & Credit Risk, March 2007, pg. 24 Vol. 12 No. 3.

b.      There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt. Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result). See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

c.      Debt buyer American Acceptance filed a lawsuit alleging that a broker of charged-off debts sold it debts to which it did not have title. American Acceptance Co. v. Goldberg, 2:08cv9 (N.D. Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D. Fla., Jan. 24, 2008). The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v. Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007). Other debt buyers have voiced similar complaints. "Florida

3

Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p. 8.

   d. In 2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in Illinois. The following is from a press release issued by the FTC in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC. . . . (http://www.ftc.gov/opa/2004/12/camco.htm).

   8. Plaintiff LVNV Funding, LLC does not hold a collection agency license. See "license lookup" screen from the Division of Professional Regulation Web site, Exhibit D.

   9. Section 4 of the ICAA, 225 ILCS 425/4, makes it unlawful for plaintiff to file collection lawsuits in Illinois without a collection agency license. Section 4 provides:

> Sec. 4. No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted

4

in that licensed state to agencies licensed in Illinois.

10.     To file a collection lawsuit is to "exercise the right to collect...." Filing 100 collection lawsuits is to "engage in the business of collecting." The ICAA expressly regulates litigation by "collection agencies." ICAA §§8a-1, 225 ILCS 425/8a-1; and 8b, 225 ILCS 425/8b.

11.     Sections 14 and 14b of the ICAA, 225 ILCS 425/14 and 14b, make it a crime to engage in the business of a collection agency without a license. (It is a Class A misdemeanor for the first offense and a felony for subsequent offenses).

12.     Section 14a, 225 ILCS 425/14a, provides:

Sec. 14a. The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.

13.     "It is well settled that courts will not aid a plaintiff who bases his cause of

5

action on an illegal act." <u>Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.</u>, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Where a license is required to engage in a business or professional for the protection of the public, one engaging in the business or profession without the required license is barred from maintaining a lawsuit. "On numerous occasions, Illinois courts have held that, where a licensing requirement has been enacted not to generate revenue, but rather to safeguard the public by assuring them of adequately trained practitioners, the unlicensed party may not recover fees for services or otherwise enforce a contract." <u>Chatham</u>, <u>supra</u>, 216 Ill. 2d 366, 381, 837 N.E.2d 48 (2005).

14.    The licensing requirements of the ICAA were imposed to protect the public. In addition to the declaration in §14a, 225 ILCS 425/14a, the public policy represented by the ICAA is stated in §1a, 225 ILCS 425/1a:

> **Declaration of public policy**
>
> **Sec. 1a. The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.**
>
> **It is further declared to be the public policy of this State to protect consumers against debt collection abuse.**

15.    Accordingly, plaintiff, an unlicensed collection agency, has no right to sue or to invoke the assistance of this Court for its unlawful business activities, declared by the General Assembly to constitute a crime, 225 ILCS 425/14 and 14b, and "to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare." 225 ILCS

6

425/14a. Defendant is entitled to judgment.

WHEREFORE, the Court should dismiss this action with prejudice on the ground that the plaintiff, LVNV Funding, LLC, lacks standing to sue.

Respectfully submitted,

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

# EXHIBIT B

Atty. No. 41106

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

LVNV FUNDING, LLC,                )
                                  )
        Plaintiff,               )        2008-M1-140111
                                  )        (Formerly Kane County case 08 SC K 1466)
        v.                        )
                                  )
PRATHANE L. MATMANIVONG,          )
                                  )
        Defendant.               )

### DEFENDANT PRATHANE L. MATMANIVONG'S §2-619
### MOTION TO DISMISS FOR LACK OF STANDING

Defendant (Ms.) Prathane L. Matmanivong respectfully requests, pursuant to 735

ILCS 5/2-619(a)(2) and (9), that the Court dismiss this action with prejudice on the ground that the

plaintiff, LVNV Funding, LLC, is required to but does not have a collection agency license and thus

lacks standing to sue.

The grounds for this motion are as follows:

    1.    Plaintiff LVNV Funding, LLC alleges that it is bringing suit as the putative

assignee of an alleged charged-off consumer credit card debt.

    2.    Plaintiff LVNV Funding, LLC has filed, since January 1, 2008, over 500

lawsuits against residents of Illinois on the same claimed basis. __Exhibit A__ is a printout of the Cook

County Circuit Court listing of its filings.

    3.    LVNV Funding, LLC is therefore a "collection agency" as defined in the

Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA").

    4.    Section 425/3(d), as amended effective January 1, 2008, brings debt buyers

1



within its purview by providing that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it .., [b]uys accounts, bills or other indebtedness and engages in collecting the same."

5.     Previously coverage was limited to a person who "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same."

6.     By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as LVNV Funding, LLC, who buy charged-off debts for their own account.  See Attorney General Madigan's September 17, 2007 press release, Exhibit B, and the redlined version of the statute, Exhibit C.

7.     This change in the law was made in response to abusive practices by debt buyers.  For example:

a.     An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated, based in part on an interview with an executive of an Illinois debt buyer:

> **More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.**
>
> **But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent.**
> **. . . .**

Corinna C. Petry, Do Your Homework: Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises,

Collections & Credit Risk, March 2007, pg. 24 Vol. 12 No. 3.

        b.     There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt. Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result). See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

        c.     Debt buyer American Acceptance filed a lawsuit alleging that a broker of charged-off debts sold it debts to which it did not have title. American Acceptance Co. v. Goldberg, 2:08cv9 (N.D. Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D. Fla., Jan. 24, 2008). The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v. Goldberg & Associates, LLC, 3:07-cv-

00406 (E.D. Tenn., filed Oct. 29, 2007). Other debt buyers have voiced similar complaints. "Florida

Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p. 8.

        d.    In 2004, the Federal Trade Commission shut down a debt buyer

called CAMCO headquartered in Illinois. The following is from a press release issued by the FTC

in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent
> of the money CAMCO collects comes from consumers who never owed the
> original debt in the first place. Many consumers pay the money to get CAMCO
> to stop threatening and harassing them, their families, their friends, and their co-
> workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no
> documentation about the original debt and in many cases no Social Security
> Number for the original debtor. CAMCO makes efforts to find people with the
> same name in the same geographic area and tries to collect the debt from them
> – whether or not they are the actual debtor. In papers filed with the court, the
> FTC alleges that CAMCO agents told consumers – even consumers who never
> owed the money – that they were legally obligated to pay. They told consumers
> that if they did not pay, CAMCO could have them arrested and jailed, seize their
> property, garnish their wages, and ruin their credit. All of those threats were
> false, according to the FTC. . . . (http://www.ftc.gov/opa/2004/12/camco.htm).

        8.    Plaintiff LVNV Funding, LLC does not hold a collection agency license. See

"license lookup" screen from the Division of Professional Regulation Web site, Exhibit D.

        9.    Section 4 of the ICAA, 225 ILCS 425/4, makes it unlawful for plaintiff to

file collection lawsuits in Illinois without a collection agency license. Section 4 provides:

> Sec. 4. No collection agency shall operate in this State, directly or indirectly
> engage in the business of collecting, solicit claims for others, have a sales office,
> a client, or solicit a client in this State, exercise the right to collect, or receive
> payment for another of any account, bill or other indebtedness, without
> registering under this Act except that no collection agency shall be required to
> be licensed or maintain an established business address in this State if the
> agency's activities in this State are limited to collecting debts from debtors
> located in this State by means of interstate communication, including telephone,

mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.

10.     To file a collection lawsuit is to "exercise the right to collect...." Filing 100 collection lawsuits is to "engage in the business of collecting." The ICAA expressly regulates litigation by "collection agencies." ICAA §§8a-1, 225 ILCS 425/8a-1; and 8b, 225 ILCS 425/8b.

11.     Sections 14 and 14b of the ICAA, 225 ILCS 425/14 and 14b, make it a crime to engage in the business of a collection agency without a license. (It is a Class A misdemeanor for the first offense and a felony for subsequent offenses).

12.     Section 14a, 225 ILCS 425/14a, provides:

Sec. 14a. The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.

5

13.    "It is well settled that courts will not aid a plaintiff who bases his cause of action on an illegal act." Chatham Foot Specialists, P.C. v. Health Care Serv. Corp., 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Where a license is required to engage in a business or professional for the protection of the public, one engaging in the business or profession without the required license is barred from maintaining a lawsuit. "On numerous occasions, Illinois courts have held that, where a licensing requirement has been enacted not to generate revenue, but rather to safeguard the public by assuring them of adequately trained practitioners, the unlicensed party may not recover fees for services or otherwise enforce a contract." Chatham, supra, 216 Ill. 2d 366, 381, 837 N.E.2d 48 (2005).

14.    The licensing requirements of the ICAA were imposed to protect the public. In addition to the declaration in §14a, 225 ILCS 425/14a, the public policy represented by the ICAA is stated in §1a, 225 ILCS 425/1a:

**Declaration of public policy**

**Sec. 1a. The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.**

**It is further declared to be the public policy of this State to protect consumers against debt collection abuse.**

15.    Accordingly, plaintiff, an unlicensed collection agency, has no right to sue or to invoke the assistance of this Court for its unlawful business activities, declared by the General Assembly to constitute a crime, 225 ILCS 425/14 and 14b, and "to be inimical to the public welfare,

6

to constitute a public nuisance, and to cause irreparable harm to the public welfare." 225 ILCS 425/14a. Defendant is entitled to judgment.

WHEREFORE, the Court should dismiss this action with prejudice on the ground that the plaintiff, LVNV Funding, LLC, lacks standing to sue.

Respectfully submitted,

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

7

# EXHIBIT C

Order/Motion Call    (This form replaces CCM1 0642)    CCM N624-5M-3/08/05(43480658)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
1st MUNICIPAL DISTRICT

LVNV

v.

Stamply

LINE NO. 23

No. 08 M1 108500

### MOTION CALL ORDER

Present before the Court: ☐ Plaintiff(s)  ☐ Defendant(s)  ☒ Plaintiff(s)' Counsel  ☒ Defendant(s)' Counsel
THIS MATTER having come before the Court, the Court having jurisdiction and being fully advised,

IT IS HEREBY ORDERED that the Motion:

| | | | |
|---|---|---|---|
| 4902 | ☐ | to Vacate DWP of _____ | is GRANTED. |
| 5902 | ☐ | _____ | is DENIED. |
| 4902 | ☐ | to Vacate Default Judgment of _____ | is GRANTED, |
| 4482 | ☐ | and this case is set for Trial on _____, ___ at ____ a.m./p.m. in Rm. ____ | |
| 4482 | ☐ | for Status on _____, ___ at ____ a.m./p.m. in Rm. ____ | |
| 5902 | ☐ | to Vacate the Default Judgment of _____ | is DENIED. |
| 4902 | ☐ | to Vacate the Dismissal of _____ | is GRANTED, |
| | | and case is reinstated; Judgment for _____ | |
| 4001 | ☐ | in the amount of $ _____ | |
| 4384 | ☐ | to Vacate Installment Order of _____ | is GRANTED, Judgment to stand. |
| 4280 | ☐ | for Summary Judgment in favor of _____ | is GRANTED. |
| 5280 | ☐ | _____ | is DENIED. |
| 4226 | ☐ | to Dismiss as to Defendant _____ | is GRANTED. |
| 5226 | ☐ | _____ | is DENIED. |

( ) ☒ Motion to/for _Dismiss of Defendant_ is CONTINUED
( ) ☒ for HEARING at _2:30_ a.m./p.m. on _Oct 23_, 2008 in Rm. _1106_
( ) ☒ with the following briefing schedule:
_Plaintiff to respond by Sept 5 2008_
_Defendant to reply by Oct 8, 2008_

( ) ☐ Judgment is entered in favor of the Plaintiff _____ and against
the Defendant _____ in the sum of $ _____ plus court costs.
( ) ☒ _Trial date of July 17 2008 is stricken_

( ) ☒ See Attached Order: _— Courtesy copies by 10/14/08_
_— Leave to substitute attorney granted_

Atty. No.: _41106_
Name: _Daniel A. Edelman_
Atty. for: _Defendant_
Address: _120 S LaSalle St. #1800_
City/State/Zip: _Chicago IL 60603_
Telephone: _312/739 4200_

ENTERED:

Judge William E. Gomolinski
JUL 2 – 2008
Circuit Court-1972

Dated: _____

Judge's No. _____

DOROTHY BROWN, CLERK OF _____ OF COOK COUNTY, ILLINOIS

EXHIBIT
C

# EXHIBIT D

Order/Motion Call   (This form replaces CCM1 0642)                    CCM N624-5M-3/08/05(43480658)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
1st MUNICIPAL DISTRICT

LVNV Funding, LLC

v.                                    LINE NO. 15

Prathane L. Matmanivong              No. 08 M1 140111

Agreed MOTION CALL ORDER

**Present before the Court:** ☐ **Plaintiff(s)** ☐ **Defendant(s)** ☐ **Plaintiff(s)' Counsel** ☑ **Defendant(s)' Counsel**
   **THIS MATTER** having come before the Court, the Court having jurisdiction and being fully advised,

**IT IS HEREBY ORDERED that the Motion:**

| | | |
|---|---|---|
| 4902 | ☐ | **to Vacate DWP of** _____ **is GRANTED.** |
| 5902 | ☐ | **is DENIED.** |
| 4902 | ☐ | **to Vacate Default Judgment of** _____ **is GRANTED,** |
| 4482 | ☐ | **and this case is set for Trial on** _____, **at** ____ **a.m./p.m. in Rm.** ____ |
| 4482 | ☐ | **for Status on** _____, **at** ____ **a.m./p.m. in Rm.** ____ |
| 5902 | ☐ | **to Vacate the Default Judgment of** _____ **is DENIED.** |
| 4902 | ☐ | **to Vacate the Dismissal of** _____ **is GRANTED,** |
| | | **and case is reinstated; Judgment for** _____ |
| 4001 | ☐ | **in the amount of $** ____ |
| 4384 | ☐ | **to Vacate Installment Order of** _____ **is GRANTED, Judgment to stand.** |
| 4280 | ☐ | **for Summary Judgment in favor of** _____ **is GRANTED.** |
| 5280 | ☐ | **is DENIED.** |
| 4226 | ☐ | **to Dismiss as to Defendant** _____ **is GRANTED.** |
| 5226 | ☐ | **is DENIED.** |

(   ) ☑ **Motion to/for** Dismiss _____ **is** CONTINUED
(   ) ☑ **for HEARING at** 2:30 **a.m./p.m.** **on** October 23 , 2008 **in Rm.** 1106
(   ) ☑ **with the following briefing schedule:**
        Plaintiff to Respond by September 4, 2008
        Defendant to Reply by October 7, 2008

(   ) ☐ **Judgment is entered in favor of the Plaintiff** _____ **and against**
        **the Defendant** _____ **in the sum of $** ____ **plus court costs.**

(   ) ☑  Courtesy copies due 10/14/08

(   ) ☐ **See Attached Order:** _____

**Atty. No.:** 41106                                    Judge William E. Gomolinski
**Name:** Cassandra P. Miller           **ENTERED:**        JUL 1 - 2008
**Atty. for:** Defendant
**Address:** 120 S LaSalle 18th Fl      **Dated:**          Circuit Court-1973
**City/State/Zip:** Chicago IL 60603                        1973
**Telephone:** 312-917-4811                                Judge's No.

**DOROTHY BROWN, CLERK OF** [ ... ] **OF COOK COUNTY, ILLINOIS**

EXHIBIT
D

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC STAMPLEY and<br>PRATHANE L. MATMANIVONG,<br>individually and on behalf of the class<br>defined herein,<br><br>     Plaintiffs,<br><br>     vs.<br><br>LVNV FUNDING, LLC;<br>ALEGIS GROUP LLC; and<br>RESURGENT CAPITAL SERVICES LP,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 08 CV 2811<br>Judge Ruben Castillo<br>Magistrate Judge Schenkier |

## PLAINTIFFS' FIRST AMENDED COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1.     There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

2.     There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt. Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result). See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

1



3.    In <u>Wood v. M&J Recovery LLC</u>, CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D. N.Y., Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved. Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt. Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

4.    In <u>Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C.</u>, IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D. Ind., Apr. 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

5.    Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts. <u>In re Foreclosure Cases</u>, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); <u>In re Foreclosure Cases</u>, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio, Nov. 27, 2007); <u>In re Foreclosure Cases</u>, 521 F. Supp. 2d 650 (S.D. Ohio 2007); <u>In re Foreclosure Cases</u>, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27, 2007); <u>NovaStar Mortgage, Inc. v. Riley</u>, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D. Ohio, Nov. 21, 2007); <u>NovaStar Mortgage, Inc. v. Grooms</u>, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D. Ohio, Nov. 21, 2007); <u>HSBC Bank USA v. Rayford</u>, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D. Ohio, Nov. 21, 2007); <u>Everhome Mtge. Co. v. Rowland</u>, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App., Mar. 20, 2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); <u>Deutsche Bank National Trust Co. v. Castellanos</u>, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); <u>HSBC Bank USA, N.A. v. Valentin</u>, 15968/07, 2008 NY Slip Op 50164U; 14

2

Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., Jan. 30, 2008); HSBC

Bank USA, N.A. v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y.

Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank

National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup.

Ct. 2007).

      6.    An article that appeared in the trade press shortly before the extension of

the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up
> accounts to collect on. Too small to buy portfolios directly from major credit
> issuers, they look to the secondary market where portfolios are resold in smaller
> chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same
> portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put
> up for sale; half the accounts are out of statute; accounts are rife with erroneous
> information; access to documentation is limited or nonexistent....

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt

portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty

surprises, Collections & Credit Risk, March 2007, pg. 24 Vol. 12 No. 3.

      7.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of

charged-off debts sold it debts to which it did not have title.  American Acceptance Co. v.

Goldberg, 2:08cv9 (N.D. Ind.).  Another debt buyer, Hudson & Keyse, filed suit alleging that the

same debt broker obtained information about consumer debts owned by Hudson & Keyse and

used the information to try to collect the debts for its own account, even though it didn't own

them.  Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed

Nov. 5, 2007).  A similar suit, alleging that the broker resold accounts it did not own, was filed by

Old National Bank (Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D.

Fla., Jan. 24, 2008).  The same debt broker is accused in another complaint of selling 6,521

accounts totaling about $40 million face value which it did not own.  RMB Holdings, LLC v.

Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007).  Other debt

buyers have voiced similar complaints. "Florida Broker Faces Multiple Lawsuits," Collections &

Credit Risk, April 2008, p. 8.

8.      In a related abuse, debt buyers would "purchase" debts with minimal

information about the debtor and then try to "collect" them from anyone with a similar name. In

2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in

Illinois. The following is from a press release issued by the FTC in connection with that case:

> ... In papers filed with the court, the agency charged that as much as 80 percent of
> the money CAMCO collects comes from consumers who never owed the original
> debt in the first place. Many consumers pay the money to get CAMCO to stop
> threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no
> documentation about the original debt and in many cases no Social Security
> Number for the original debtor. CAMCO makes efforts to find people with the
> same name in the same geographic area and tries to collect the debt from them –
> whether or not they are the actual debtor. In papers filed with the court, the FTC
> alleges that CAMCO agents told consumers – even consumers who never owed the
> money – that they were legally obligated to pay. They told consumers that if they
> did not pay, CAMCO could have them arrested and jailed, seize their property,
> garnish their wages, and ruin their credit. All of those threats were false, according
> to the FTC.... (http://www.ftc.gov/opa/2004/12/camco.htm).

9.      In order to protect Illinois residents against this sort of abuse, the Illinois

Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as

"collection agencies." This makes applicable the special assignment requirements in ICAA §8b,

225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required

to but did not have an assignment that complied with ICAA §8b does not have a valid claim and

that the defendant in such a case is entitled to judgment. Business Service Bureau, Inc. v.

Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

10.      Section 8b of the ICAA provides:

> **Sec. 8b. An account may be assigned to a collection agency for collection
> with title passing to the collection agency to enable collection of the account in
> the agency's name as assignee for the creditor provided:**
>
> **(a) The assignment is manifested by a written agreement, separate
> from and in addition to any document intended for the purpose of
> listing a debt with a collection agency. The document manifesting the
> assignment shall specifically state and include:**

4

(i) the effective date of the assignment; and

(ii) the consideration for the assignment.

(b) The consideration for the assignment may be paid or given either
before or after the effective date of the assignment. The consideration
may be contingent upon the settlement or outcome of litigation and if
the claim being assigned has been listed with the collection agency as
an account for collection, the consideration for assignment may be the
same as the fee for collection.

(c) All assignments shall be voluntary and properly executed and
acknowledged by the corporate authority or individual transferring
title to the collection agency before any action can be taken in the
name of the collection agency.

(d) No assignment shall be required by any agreement to list a debt
with a collection agency as an account for collection.

(e) No litigation shall commence in the name of the licensee as plaintiff
unless: (i) there is an assignment of the account that satisfies the
requirements of this Section and (ii) the licensee is represented by a
licensed attorney at law. . . .

11.    Furthermore, the assignment must be attached to the complaint.  Candice
Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

12.    Finally, the assignee is required "in his or her pleading on oath allege that
he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired
title...." 735 ILCS 5/2-403(a).

13.    Defendant LVNV Funding, LLC, a debt buyer regulated by the ICAA
since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b
and, therefore, without valid claims.  Resurgent directs the filing of the lawsuits.

14.    In this action, plaintiffs complain that such practice violates both the Fair
Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f,  and ICAA §9.

## VENUE AND JURISDICTION

15.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C.
§1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

16.    Venue and personal jurisdiction in this District are proper because:

a.    Defendants' collection communications and activities impacted plaintiffs within this District;

b.    Defendants do business within this District.

## PARTIES

17.    Plaintiff Eric Stampley is an individual who resides in the Northern District of Illinois.

18.    Plaintiff Prathane L. Matmanivong is an individual who resides in the Northern District of Illinois.

### LVNV Funding, LLC

19.    Defendant LVNV is a limited liability company organized under Delaware law that does business in Illinois.  Its registered agent and office are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

20.    Defendant LVNV is engaged in the business of purchasing charged-off debts and attempting to collect them.

21.    Defendant LVNV stated on its Web site, www.lvnvfunding.com, that "LVNV Funding purchases portfolios of both domestic (U.S.) and international consumer debt from credit grantors including banks, finance companies, and other debt buyers. As the new owner of any debt purchased from the original creditor or from another debt buyer, LVNV Funding's name may appear on a customer's credit bureau, or in a letter from a collection agency if the account is delinquent."

22.    Defendant LVNV also states on its Web site that:

All capital markets and business development activities are handled internally, while the management of purchased assets is outsourced to a third-party specializing in the management of these types of consumer assets, Resurgent Capital Services LP (Resurgent). Resurgent is a manager and servicer of domestic and international consumer debt portfolios for credit grantors and debt buyers, and has been hired by LVNV Funding to perform these services on its behalf. Resurgent, a licensed debt collector, may perform these activities directly, or in many cases, will outsource the recovery activities to other specialized, licensed collection agencies. If you are a customer, please direct your inquiries to the firm currently working your account.

6

23.    Defendant LVNV pays an average of less than 10 cents on the dollar for the charged-off debts it purchases.

24.    Since January 1, 2008, LVNV has been the plaintiff in more than 1,000 collection lawsuits filed in Illinois courts.

25.    Defendant LVNV is a debt collector as defined in the FDCPA.

**Resurgent Capital Services LP**

26.    Defendant Resurgent is a limited partnership entity with offices at 200 Meeting Street, Suite 206, Charleston, SC 29401.

27.    Defendant Resurgent operates a collection agency.

28.    Defendant Resurgent holds a collection agency license from the state of Illinois.

29.    Defendant Resurgent uses the mails and telephones to collect debts originally owed to other entities.

30.    Defendant Resurgent also is the plaintiff in lawsuits in the Illinois courts, mainly foreclosure lawsuits.

31.    Defendant Resurgent has taken title to real estate located in Illinois.

32.    Defendants Resurgent and LVNV are under common ownership and management. Both are part of the Sherman Financial Group. On information and belief, based on published news reports, many of the personnel are the same for both entities.

33.    On information and belief, based on the Resurgent Web site, defendant Resurgent directed the collection activity complained of herein.

34.    Defendant Resurgent is a debt collector as defined in the FDCPA.

**Alegis Group LLC**

35.    Defendant Alegis Group LLC is a limited liability company chartered under the law of Delaware with offices at 200 Meeting Street, Suite 206, Charleston, SC 29401. It does business in Illinois. Its registered agent and office are CT Corporation System, 208 S.

7

LaSalle St., Suite 814, Chicago, IL 60604.

36.     Defendant Alegis Group LLC is the general partner of Resurgent.

37.     The acts of Resurgent are attributable to Alegis Group LLC.

## FACTS RELATING TO PLAINTIFF STAMPLEY

38.     On or about February 4, 2008, LVNV Funding, LLC filed suit against plaintiff Eric Stampley in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  LVNV Funding, LLC claimed to have purchased the debt.

39.     The complaint did not attach any sort of assignment.

40.     On information and belief, defendant LVNV Funding, LLC did not have an assignment that complied with §8b of the Collection Agency Act.

41.     Defendant LVNV Funding, LLC therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

## FACTS RELATING TO PLAINTIFF MATMANIVONG

42.     On or about March 17, 2008, LVNV Funding, LLC filed suit against plaintiff Prathane L. Matmanivong in the Circuit Court of Kane County to collect a purported debt incurred for personal, family or household purposes.  LVNV Funding, LLC claimed to have purchased the debt.

43.     Plaintiff Matmanivong resides in Cook County, not Kane County.

44.     The complaint did not attach any sort of assignment.

45.     On information and belief, defendant LVNV Funding, LLC did not have an assignment that complied with §8b of the Collection Agency Act.

46.     Defendant LVNV Funding, LLC therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

## FACTS – GENERAL

47.     Defendant LVNV Funding, LLC regularly files lawsuits on debts it claims

8

to have purchased without having an assignment that complies with §8b of the Collection Agency

Act, and therefore, without a valid claim.

48.    Defendant Resurgent, as servicer, directs the filing of such lawsuits.

49.    Defendants know or should know that LVNV has no valid claim, but files

suit anyway because consumers are unlikely to realize the fact.

50.    On information and belief, based on a computer search of court records,

defendant LVNV is the plaintiff in over 1,000 such lawsuits.

## CLASS ALLEGATIONS

51.    Plaintiffs bring this action on behalf of a class, pursuant to Fed.R.Civ.P.

23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom a collection lawsuit

was filed in the name of defendant LVNV Funding, LLC (c) in Illinois (d) subsequent to January

1, 2008, (e) without attaching to the complaint an assignment that complied with §8b of the

ICAA.

52.    The class is so numerous that joinder of all members is not practicable.

53.    On information and belief, there are at least 1,000 individuals against

whom a collection lawsuit was filed in the name of defendant LVNV Funding, LLC in Illinois

subsequent to January 1, 2008, without attaching to the complaint an assignment that complied

with §8b of the ICAA.

54.    There are questions of law and fact common to the class members, which

common questions predominate over any questions relating to individual class members.  The

predominant common questions are:

a.    Whether defendants engage in a practice of filing lawsuits without

attaching to the complaint an assignment that complied with §8b of the ICAA;

b.    Whether such lawsuits are therefore subject to a defense of which

defendants know or should know about;

c.    Whether such practice is an unfair or deceptive;

9

       d.      Whether defendants violate the ICAA.

55.      Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

56.      Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

57.      A class action is superior for the fair and efficient adjudication of this matter, in that:

       a.      Individual actions are not economically feasible;

       b.      Members of the class are likely to be unaware of their rights;

       c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

58.      Plaintiffs incorporate paragraphs 1-57.

59.      The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

60.      Since <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480, 1488 (M.D. Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

61.      Section 1692e provides:

**§ 1692e.      False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)      The false representation of—**

10

(A)    the character, amount, or legal status of any debt; . . .

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

62.    Section 1692f provides:

§ 1692f.    Unfair practices [Section 808 of P.L.]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

63.    Plaintiffs incorporate paragraphs 1-57.

64.    Defendants LVNV and Resurgent are each a "collection agency" as defined in the ICAA.

65.    Defendant Resurgent is a licensee under the ICAA.

66.    Section 425/3(d) of the ICAA, as amended effective January 1, 2008, brings debt buyers within its purview by providing that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it ... [b]uys accounts, bills or other indebtedness and engages in collecting the same...." Previously coverage was limited to a person who "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same...." By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as defendant LVNV who buy charged-off debts for their own

11

account.

67.    Defendants violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

68.    Defendants violated the following provisions of 225 ILCS 425/9:

**. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**

69.    A private right of action exists for violation of the ICAA. Sherman v. Field Clinic, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

70.    Plaintiffs and the members of the class were damaged as a result.

WHEREFORE, plaintiffs requests that the Court grant the following relief in favor of plaintiffs and the class and against defendants:

a.    Compensatory, punitive and nominal damages;

b.    Costs;

c.    Such other and further relief as is appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

71.    Plaintiffs incorporate paragraphs 1-57.

72.    Defendants' conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

73.    Defendants engaged in such conduct in the course of trade and commerce.

74.    Defendants engaged in such conduct for the purpose of obtaining money from plaintiffs and others.

75.    Plaintiffs and the members of the class were damaged as a result.

WHEREFORE, plaintiffs requests that the Court enter judgment in favor of plaintiffs and the class and against defendants for:

a.    Actual damages;

b.    Punitive damages;

c.  An injunction against further violations;

d.  Attorney's fees, litigation expenses and costs of suit;

e.  Such other or further relief as the Court deems proper.


s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

13

## JURY DEMAND

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on June 19, 2008, I caused the foregoing **Plaintiffs' First Amended Complaint – Class Action** to be filed electronically using the Court's CM/ECF system which will send notice to the following:

David M. Schultz (dschultz@hinshawlaw.com)
Todd P. Stelter (tstelter@hinshawlaw.com)
Hinshaw & Culbertson
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
(312) 704-3001 (FAX)

James R. Bedell (bedellj@moss-barnett.com)
Michael S. Poncin (poncinm@moss-barnett.com)
John K. Rossman (rossmanj@moss-barnett.com)
Moss & Barnett, PA
4800 Wells Fargo Center
90 South 7th Street
Minneapolis, MN 55402
(612) 877-5000
(612) 877-5999 (FAX)

s/ Daniel A. Edelman ____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT F

IN THE CIRCUIT COURT OF COOK COUNTY
MUNICIPAL DEPARTMENT, FIRST DISTRICT

08 M1 108500

LVNV Funding LLC
    Plaintiff,

No.

vs.

Amount Claimed: $4,635.53
plus costs

MAR 0 6 2008

Eric Stampley

Return Date:

    Defendant.

## COMPLAINT

COMES NOW THE Plaintiff and for its cause of action against Defendant alleges and states as follows:

1. THAT Defendant purchased goods, merchandise and services on the following credit account issued to Defendant: Sears 5049948133622508.

2. THAT Defendant agreed to pay all amounts charged by the use of the Sears credit account.

3. THAT prior to the commencement of this action, the owner of the Sears credit account sold, transferred and assigned all of its interest in the account to Plaintiff.

4. THAT on January 30, 2008, Defendant was/were indebted to Plaintiff in the sum of $4,635.53 as the unpaid balance on said account.

5. THAT Defendant is in default by failing to make the requisite payments under the terms of the agreement. As a consequence of said default, as of January 30, 2008, Defendant owe/owes Plaintiff the sum of $4,635.53, as shown in Exhibit A. Although duly demanded, payment has not been made.

WHEREFORE, Plaintiff prays for judgment against the Defendant in the amount of $4,635.53 plus Plaintiff's court costs.

MEYER & NJUS, P.A.

MEYER & NJUS, P.A.
Attorney I.D. 29840
134 N. LaSalle Street, Suite 1840
Chicago, Illinois 60602
800-341-8295    sal 630000
File No. 200714242

January 30, 2008



EXHIBIT
F

STATE OF SOUTH CAROLINA    )

                                                    ) SS.

COUNTY OF GREENVILLE       )


## VERIFIED STATEMENT OF ACCOUNT


The undersigned Representative, upon being duly sworn, says that I am the Authorized Representative for LVNV Funding LLC, as purchaser from and assignee of Citibank  or any other assignee that may have or have had any interest in Defendant's credit account or any interest in any obligation relating to such credit account, and am familiar with the records owned, maintained and/or in the possession of LVNV Funding LLC pertaining to the account of Eric Stampley, Eric Stampley bearing account number 5049948133622508.  The amount due on said account, over and above all set-offs and counterclaims is $4,635.53 as of the date of this statement.


Executed this 14 December 2007.                LVNV Funding LLC,
                                                                assignee of Citibank,

                                                                By: _____

                                                                Print Name: Nikki Rambo
                                                                Title: Authorized Representative

Sworn to before me this 14 December 2007.

                                                                _____
                                                                Notary Public

CC714243 - IL

Meyers

IN THE CIRCUIT COURT OF COOK COUNTY
MUNICIPAL DEPARTMENT, FIRST DISTRICT

LVNV Funding LLC

      Plaintiff,                                        No.

vs.

Eric Stampley

      Defendant.


**AFFIDAVIT OF NON-MILTARY SERVICE**

STATE OF ILLINOIS      )
                    ) ss.
COUNTY OF COOK      )


Christopher McKean, being first duly sworn on oath, states as follows:

1. That he is one of the attorneys for the plaintiff, LVNV Funding LLC, in the above-captioned action.

2. This affidavit is made for the purpose of obtaining a default judgment against the above named defendant(s).

3. That, upon a search of the website of the Department of Defense, Defendant, Eric Stampley, is not now on active duty in any of the armed services of the United States.

4. That this Affidavit is made for the purpose of complying with the Servicemembers Civil Relief Act of 2003, 50 U.S.C. app. 521.

                                   Christopher McKean

Subscribed and sworn to before me this
January 30, 2008.


_____
Notary Public, State of Illinois

OFFICIAL SEAL
DIANA NAUER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:11/16/10


Our File No. 200714242

# EXHIBIT G

WWR #:06165503

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT

KANE COUNTY, ILLINOIS

LVNV Funding, LLC Assignee of
FIRST USA

       Plaintiff,

v.

PRATHANE L MATMANIVONG

       Defendant(s),

No.

Amount Claimed: $4,444.61

Return Date: APRIL 9 _____ , 2008

## VERIFIED COMPLAINT

Now comes the Plaintiff, LVNV Funding, LLC, by and through its attorneys Weltman, Weinberg & Reis Co., L.P.A., and complains of the Defendant(s), PRATHANE L MATMANIVONG, as follows:

1. Plaintiff, LVNV Funding, LLC, ("Plaintiff") is a South Carolina corporation authorized to transact business in the State of Illinois.

2. The Defendant, PRATHANE L MATMANIVONG ("Defendant") is a resident of the State of Illinois, residing in the County of KANE.

3. The Defendant(s) applied for a credit card account with FIRST USA and subsequently sold its rights and interest to Plaintiff for value.

4. By use of the account, the Defendant(s) became bound by the terms and conditions contained in the Cardholder Agreement ("Agreement").

5. Defendant(s) made various purchases and/or cash advances on said Account and failed to pay for the same.

6. Plaintiff has exercised its rights pursuant to the terms and conditions of said Agreement to accelerate the time for payment of the entire balance due and owing by Defendant(s) to Plaintiff.



EXHIBIT
G

7.    According to the Account Statement attached hereto and made a part hereof as Exhibit "1", the Defendant(s) owes Plaintiff, the sum of $3,684.91 plus accrued interest at the rate of 5.000% per annum through March 7, 2008 in the amount of $759.70 for a total amount of $4,444.61 .

8.    Although demand has been made upon Defendant(s) to pay the balance due and owing, the Defendant(s) has failed or refused to do so.

WHEREFORE, Plaintiff prays for Judgment against the Defendant(s), PRATHANE L MATMANIVONG, in the principal sum of $3,684.91, plus accrued interest through March 7, 2008 in the amount of $759.70, for a total amount due of $4,444.61 together with lawful interest and court costs.

BY: _____
                                        Attorney for Plaintiff

WELTMAN, WEINBERG & REIS CO., L.P.A.
180 N. LaSalle Street, Suite 2400
Chicago, Illinois 60601
312-782-9676
Fax: 312-782-4201
Atty. No. 6271691
MM INITIAL:YGO

This law firm is a debt collector attempting to collect this debt for our client and any information obtained will be used for that purpose.

AFFIDAVIT

ACCOUNT NUMBER:     4417121522929853
BALANCE:            $3,684.91
DEFENDANT(S):     PRATHANE L MATMANIVONG   BOUN L MATMANIVONG

STATE OF South Carolina
COUNTY OF Greenville

Dondrea Robinson personally appeared before me, this day and after being duly sworn, according to law, upon his/her oath and says:

I am the duly authorized representative of LVNV Funding LLC, the owner of this account through purchase.

THAT this affidavit is made on the basis of my personal knowledge and in support of Plaintiff's suit on account against the Defendant(s).

THAT, in my capacity as authorized representative, I have control over and access to records regarding the Account of the above referenced Defendant(s), further, the original owner maintained records pertaining to its business; that the records were prepared in the ordinary course of business, at or near the time of the transaction or event, by a person with knowledge of the event or transaction, that such records are kept in the ordinary course of the original creditors business and that of the Plaintiff; and that based upon my review of the business records of the original creditor, I have personally inspected said Account and statements regarding the balance due on said account.

THAT the annexed statement of account is a true and correct statement of what is now due and owing on the account.

Based on a review of the account records, to the best of my knowledge and belief the above referenced Defendant(s) is not engaged in active duty in the military service of the United States and is a resident of the State and of the Country in which this action has been filed.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
Authorized Representative

Sworn and Subscribed before me,
This 11th of February, 2008.

_____
NOTARY

WWR#

3

**Resurgent Capital Services, LP**
**P O Box 10525**
**Greenville, SC 29601**

Current Owner: LVNV FUNDING LLC
Original Creditor :
Previous Owner: FIRST USA
Statement Closing Date: 7/20/2007

PRATHANE MATMANIVONG
1167 SEBRING DR APT#5
ELGIN, IL 60120

| Account Number | | 4417121522929853 |
|---|---|---|
| Purchase Balance | $ | 3,684.91 |
| Payments | $ | 0.00 |
| Credit Adjustments | $ | |
| Finance Charges | $ | 716.28 |
| New Balance | $ | 4,401.19 |

**TRANSACTIONS**

| Transaction Date | Description | Amount |
|---|---|---|

## This Statement is not an original.

*This statement has been generated on behalf of LVNV Funding LLC, account owner*

6165503

4